KIRKLAND v. NATIONAL CIVIC ASSISTANCE GROUP

[108 N.C. App. 327 (1992)]

---

JAMES B. KIRKLAND, JR. AND EVELYN KIRKLAND D/B/A JEVKO INVESTMENTS v. NATIONAL CIVIC ASSISTANCE GROUP, INC. AND PEERLESS INSURANCE COMPANY

No. 9110SC1013

(Filed 15 December 1992)

**Charities and Foundations § 14 (NCI4th); Principal and Surety § 11 (NCI3d) — charitable contributions — bond of professional solicitor — inapplicability to office lease**

A bond provided by defendant surety to a professional solicitor of charitable contributions under N.C.G.S. § 131C-10 of the Charitable Solicitation Act did not cover the breach of a lease of office space by the professional solicitor since (1) the leasing of office space is not a fund-raising expense and thus is not an activity "subject to this Chapter" within the meaning of § 131C-10, and (2) the purpose of the bond is to protect those who have made charitable contributions.

**Am Jur 2d, Suretyship § 104.**

Appeal by plaintiffs from judgment entered 19 July 1991 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 15 October 1992.

*David R. Cockman for plaintiffs-appellants.*

*Haywood, Denny, Miller, Johnson, Sessoms & Patrick, by George W. Miller, Jr. and John R. Kincaid, for defendant-appellee Peerless Insurance Company.*

LEWIS, Judge.

In January 1989 defendant National Civic Assistance Group, Inc. [hereinafter National] agreed to lease space from plaintiffs

for a period beginning February 1, 1989 and ending January 31, 1992. National never paid any rent, defaulted on the lease, and abandoned it in December 1989, owing plaintiffs $10,576.67. The record does not reveal whether National ever actually occupied the premises.

In September 1989 defendant Peerless Insurance Company— [hereinafter Peerless] provided National with a bond, effective October 1, 1989, in conformance with N.C.G.S. § 131C-10 of the Charitable Solicitations Act [hereinafter Chapter 131C or the Act]. This bond was completely unrelated to the lease. Peerless was not involved in the lease agreement and had no relationship with National at that time. The $20,000.00 bond is a condition of licensure for professional solicitors. § 131C-10 (Supp. 1992). There is no evidence, however, that National ever actually applied for or obtained a license under Chapter 131C.

Plaintiffs filed suit in June 1990 against both National and Peerless to recover the unpaid rent and attorney's fees. The trial court granted summary judgment in favor of Peerless on July 19, 1991, and entered a final default judgment against National on August 14, 1991, awarding plaintiffs $10,576.67 in unpaid rent as well as costs, interest, and attorney's fees. Plaintiffs now appeal the order granting summary judgment in favor of Peerless.

---

At the outset we note summary judgment is appropriate only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. N.C.G.S. § 1A-1, Rule 56(c) (1990); *DiOrio v. Penny*, 331 N.C. 726, 728, 417 S.E.2d 457, 459 (1992). The court must view the evidence in the light most favorable to the nonmovant, giving the nonmovant the benefit of any reasonable inference. *Virginia Elec. & Power Co. v. Tillett*, 80 N.C. App. 383, 385, 343 S.E.2d 188, 191, *cert. denied*, 317 N.C. 715, 347 S.E.2d 457 (1986). Because we find there are no genuine issues of material fact in this case and Peerless is entitled to judgment as a matter of law, we uphold summary judgment in favor of Peerless.

The only question before this Court is whether the bond issued by Peerless covers National's breach of the lease agreement and should therefore be available to plaintiffs to satisfy their judgment against National. We note the purpose of the Charitable Solicitations Act is to "protect the general public and public charity in

the State of North Carolina and to provide for the establishment and enforcement of basic standards for the soliciting and use of charitable funds in North Carolina." § 131C-2 (1986). National's intentions were apparently to act as a professional solicitor under this Act. Section 131C-6 requires any person acting as a professional solicitor to apply for and obtain an annual license from the Department of Human Resources. § 131C-6 (Supp. 1992). Applicants are also required to file a $20,000.00 bond "at the time of making application," which

> shall run to the State for . . . any penalties and to any person who may have a cause of action against the obligor of the bond for any losses resulting from the obligor's conduct of any and all *activities subject to this Chapter* or arising out of a violation of this Chapter or any rule of the Commission.

§ 131C-10 (Supp. 1992) (emphasis added). Exactly which activities are "activities subject to this Chapter" is not stated in the statute. Although the bond is also available for losses resulting from "violation[s] of this Chapter or any rule of the Commission [Social Services Commission]," plaintiffs did not extensively address these alternatives, but merely stated the breach of the lease should be included in "any and all activities subject to this chapter." The question properly before this Court is whether the lease agreement falls within the scope of activities covered by the Act.

Plaintiffs contend that "activities subject to this Chapter" include fund-raising activities and the expenses incurred, which would include leasing office space. Plaintiffs argue that it would be "absurd to leave out the physical location from which solicitations are made." However, Chapter 131C itself defines fund-raising expenses as "the expenses of all activities that constitute a part of soliciting charitable contributions." § 131C-3(6) (1986). To "solicit" means to "request or appeal . . . for any charitable contribution," which includes oral and written requests, announcements through the press, television, or telephone, distribution and circulation of handbills and advertisements, and the sale of advertisements, advertising space, subscriptions, and tickets. § 131C-3(11). Nothing in the definition of solicitation encompasses an activity such as leasing office space or indicates that leasing space could be considered "a part" of solicitation. We are bound by the statutory definitions and must conclude that leasing office space is not a fund-raising

expense. Plaintiffs do not offer any other theories or examples of activities subject to Chapter 131C.

Peerless contends the only relevant activities are those associated with solicitation by a licensed professional solicitor. A professional solicitor subject to § 131C-6, and thus subject to § 131C-10, is "any person who . . . solicits or employs another to solicit contributions." § 131C-3(9). Peerless claims that leasing office space does not fall within the definition of solicitation, and is therefore not covered by the bond. As stated above, we agree with Peerless that leasing space is not an activity included within the definition of solicitation.

Furthermore, according to Peerless, the purpose of the bond is to protect those who have made charitable contributions. This interpretation is consistent with the purpose of the Act as a whole, which is to govern "the soliciting and use of charitable funds." § 131C-2. We agree the bond was not meant to be used to satisfy obligations on a lease which was already in default at the time the bond was issued.

We choose a narrow interpretation of the activities covered by the bond, because to hold otherwise would be to open the door to questionable claims. We do not want to encourage persons or organizations to obtain a bond under Chapter 131C and then incur liabilities ostensibly as charitable fund-raising expenses, believing that the bond will cover any default regardless of whether they have complied with the other provisions of Chapter 131C. Unless the statutory definition of fund-raising expenses is followed almost anything could arguably be considered such an expense, including leasing or purchasing property, automobiles, boats, airplanes, etc. Such activities would clearly be beyond the scope of activities subject to this Chapter and intended to be covered by the bond.

We find no error and hold that summary judgment in favor of Peerless was appropriate.

Affirmed.

Judges JOHNSON and COZORT concur.